UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                  :
In re:                                  :
                                  :
STONE & WEBSTER, INC.      :    No. 00-CV-10874-RWZ
SECURITIES LITIGATION       :
                                  :
_____  :

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

| | |
|---|---|
| GRANT & EISENHOFER P.A. | BERMAN, DEVALERIO, PEASE, |
| Jay W. Eisenhofer | TABACCO, BURT & PUCILLO |
| Sidney S. Liebesman | Norman M. Berman (BBO# 040460) |
| Chase Manhattan Centre | Bryan A. Wood (BBO# 648414) |
| 1201 North Market Street | One Liberty Square |
| Wilmington, DE 19801 | Boston, MA 02109 |
| (302) 622-7000 | (617) 542-8300 |
| Lead Counsel for Plaintiffs | Liaison Counsel for Plaintiffs |

Dated: July 7, 2006

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................... 2

ARGUMENT .................................................................................................................................. 6

I.     Legal Standard For Class Certification .............................................................................. 6

II.    The Instant Action Satisfies Each Of The Requirements Of Rule 23(a) ........................... 7

      A.     The Proposed Class Is So Numerous That
             Joinder Of All Members Is Impracticable ............................................................. 7

      B.     There Are Questions Of Law And Fact That Are
             Common To Lead Plaintiffs And The Class ......................................................... 9

      C.     Plaintiffs' Claims Are Typical Of The Claims Of
             Other Class Members ........................................................................................... 10

      D.     Plaintiffs Are Adequate Class Representatives ................................................... 12

III.   The Proposed Class Satisfies Rule 23(b)(3) ..................................................................... 13

      A.     Predominance ....................................................................................................... 13

      B.     Superiority ............................................................................................................ 14

REQUEST FOR ORAL ARGUMENT ........................................................................................ 15

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES

**CASES**                                                                                                        **PAGE(S)**

*Abelson v. Strong,*
MDL No. 584, Civ. A. No. 85-0592-S,
1987 WL 15872 (D. Mass. July 30, 1987)..................................................................11

*Duhaime v. John Hancock Mutual Life Insurance Co.*,
177 F.R.D. 54 (D. Mass. 1997)......................................................................................7

*Gorsey v. I.M. Simon & Co., Inc.*,
121 F.R.D. 135 (D. Mass. 1988)....................................................................................8

*John Hancock Life Ins. Co. v. Goldman, Sachs & Co.,*
No. Civ. A. 01-10729-RWZ, 2004 WL 438790 (D. Mass. Mar. 9, 2004).....................6

*Kinney v. Metropolitan Global Media, Inc.*,
No. Civ. A. 99-579 ML, 2002 WL 31015604 (D.R.I. Aug. 22, 2002) .........................8

*Kirby v. Cullinet Software, Inc.*,
116 F.R.D. 303 (D. Mass. 1987)....................................................................................9

*Priest v. Zayre Corp.*,
118 F.R.D. at 552 (D. Mass. 1988)..................................................................9, 11, 14

*Randle v. Spectran*,
129 F.R.D. 386 (D. Mass. 1988)..................................................................................14

*Smilow v. Southwestern Bell Mobile System, Inc.*,
323 F.3d 32 (1st Cir. 2004)...............................................................................7, 14, 15

*In re Stone & Webster, Inc. Sec. Litig.*,
No. 00-10874-RWZ, 2006 WL 1738348 (D. Mass. June 23, 2006).............................5

*In re Stone & Webster, Inc. Sec. Litig.*,
217 F.R.D. 96 (D. Mass. 2003)......................................................................................4

*In re Stone & Webster, Inc. Sec. Litig.*,
253 F. Supp. 2d 102 (D. Mass. 2003) ...........................................................................4

*In re Stone & Webster, Inc. Sec. Litig.*,
414 F.3d 187 (1st Cir. 2005)............................................................................. *passim*

*In re Stone & Webster, Inc. Sec. Litig.*,
424 F.3d 24 (1st Cir. 2005)............................................................................................5

*Swack v. Credit Suisse First Boston*,
    230 F.R.D. 250 (D. Mass. 2005) .......................................................................... *passim*

*In re: Transkaryotic Therapies, Inc. Sec. Litig.*,,
    No. Civ.A.03-10165-RWZ, 2005 WL 3178162 (D. Mass. Nov. 28, 2005) ........ *passim*

*Weiss v. Zayre Corp.*,
    Civ. A. No. 86-2919-2, 1988 WL 20928 (D. Mass. Feb. 29, 1988) ............................ 12

**FEDERAL STATUTES**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Lead Plaintiffs RAM Trust Services, Inc. ("RAM") and Lens Investment Management, LLC ("Lens") and plaintiffs Gilbert H. Van Note, Jr., Robert M. White, Trustee for the Robert M. White Trust, and Kevin C. Frye (the "Additional Plaintiffs," collectively with RAM and Lens, the "plaintiffs") file this memorandum of law in support of their Motion for Class Certification.

## PRELIMINARY STATEMENT

This securities fraud class action alleges that Stone & Webster, Inc. ("S&W" or the "Company"), S&W's former chief executive officer H. Kerner Smith ("Smith"), S&W's former chief financial officer Thomas L. Langford ("Langford"), (collectively the "Individual Defendants") and S&W's independent auditors, PricewaterhouseCoopers LLP ("PwC") engaged in a common course of fraudulent conduct which ultimately resulted in the destruction of the Company and the loss by the Company's stockholders of virtually the entire value of their holdings.[1] Plaintiffs seek redress on behalf of all persons and entities who purchased S&W securities between January 22, 1998 and May 8, 2000 (the "Class Period") and were damaged thereby (the "Class"), with a subclass consisting of all persons or entities which purchased S&W securities between and including January 1, 1999 and May 8, 2000 (the "10b-5 Subclass").[2] As described below, this action satisfies each of the prerequisites for class certification under Fed. R. Civ. P. 23(a) and (b)(3), and, therefore the Court should grant plaintiffs' Motion for Class Certification and certify plaintiffs as representatives of the Class.

---

[1] The claims against S&W were stayed at the outset of this litigation by Section 362 of the Bankruptcy Code. *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 191 (1st Cir. 2005).

[2] Excluded from the proposed Class and the 10b-5 Subclass are the defendants, the officers, directors and partners thereof, members of their immediate families and their legal representatives, heirs, successors and assigns, any entity in which any of the foregoing have or had a controlling interest, and the directors and officers liability insurance carriers (and any affiliates or subsidiaries thereof) of any defendant.

**FACTUAL AND PROCEDURAL BACKGROUND**

S&W was a Boston-based international construction and engineering firm founded more than 100 years ago. Practically overnight, as a result of the fraud alleged by the plaintiffs, S&W's financial statements were exposed as a charade and hundreds of millions of dollars in purported assets vanished. Mere weeks after reporting net assets of $324 million, S&W suddenly filed for bankruptcy protection and shareholders were left holding worthless stock as the Company's deep insolvency was revealed. In the aftermath of S&W's swift demise, both the Securities and Exchange Commission ("SEC") and the Department of Labor ("DOL") launched investigations into the collapse of the Company. Smith was sued by and on behalf of participants of the Employee Investment Plan of S&W in connection with the sale of $15 million of S&W stock to the plan in December 1999 (the "ERISA Action").[3] S&W's successor in bankruptcy, the Shaw Group, Inc. ("Shaw") sued Smith in the Massachusetts Superior Court to void the "extensive and unjustified rights and benefits" in Smith's change of control agreement based upon his responsibility for S&W's financial demise. An affidavit filed by Shaw's expert in connection with that litigation alleged that:

> . . . Smith engaged in <u>illegal conduct</u> and <u>gross misconduct</u> that was materially and demonstrably injurious to the Company, and<u> he willfully performed this illegal conduct</u> and gross misconduct<u> in bad faith</u> and did so not in the best interests of the Company.
> . . . <u>Smith's illegal conduct and gross misconduct was not the result of bad judgment, but calculated and due to gross negligence and illegal acts.</u> For instance, <u>Smith did not fully and fairly inform the board of directors, shareholders and SEC of the</u>

---

[3] The ERISA action, which alleged *inter alia* that Smith breached his fiduciary duties by misrepresenting the financial stability of S&W, while aware of the financial difficulties that existed at the Company, was settled for $8,000,000. *See* attached Declaration of Sidney S. Liebesman ("Liebesman Decl.") Ex. A.

> on-going deterioration of the Company from 1997 until its sale in
> bankruptcy.

Liebesman Decl., Ex. B at ¶¶ 8-9 (emphasis added).

Less than one-month before announcing bankruptcy, S&W reported that the Company had total assets of $933,296,000, liabilities of only $608,947,000 and shareholders' equity of $324,349,000. *See* Annual Report on Form 10-K filed by S&W on April 14, 2000, Liebesman Decl. Ex. C. S&W's bankruptcy proceedings, however, revealed that these public statements – and, indeed, all of S&W's financial statements issued during the Class Period – were utterly fraudulent and in reality the Company was deeply insolvent.

Plaintiffs filed, on January 4, 2001, a detailed Consolidated and Amended Class Action Complaint (the "Complaint"), which alleges that the defendants committed a series of deceptive acts and made a host of material misrepresentations and omissions (in SEC filings, press releases and otherwise) to falsely portray S&W's business as profitable and to conceal the Company's true financial condition from investors. The Complaint alleges, *inter alia*, that during the Class Period defendants: (1) intentionally underbid contracts and caused S&W to improperly recognize false profits on underbid contracts; (2) improperly recognized non-existent revenues and concealed losses in connection with the Company's largest construction project, the Trans Pacific Petrochemical Indotama ("TPPI") project; and (3) grossly misrepresented S&W's liquidity and overall financial condition. S*ee Stone & Webster, Inc. Sec. Litig*., 414 F.3d 187, 191 (1st Cir. 2005) (holding that plaintiffs had stated claims based upon intentional underbidding, the improper recognition of revenue from TPPI and the concealment of the liquidity crisis).[4] The

---

[4] Recently, internal S&W documents previously concealed by S&W but obtained by plaintiffs in the ERISA Action revealed that the TPPI project's failure was due in no small part to the Company's inability to pay a promised bribe to a relative of then Indonesian President Suharto. Those same documents, including documents prepared by S&W's own internal auditors, also underscore that PwC simply *could not* have conducted its audits of S&W's

Complaint also alleges that PwC knew or recklessly disregarded that S&W's financial statements during the Class Period were materially false and that PwC ignored or recklessly disregarded numerous glaring "red flags" indicating a gaping disconnect between S&W's financial statements and the true, precarious state of S&W's finances. Indeed, plaintiffs allege that PwC's audits of S&W's financial statements were so deficient, and violated Generally Accepted Auditing Principles ("GAAS") in so many material respects, that they amounted to no audit at all. Complaint at ¶¶ 339-357. Plaintiffs asserted claims against each of the defendants for violation of Sections 10 and 18 of the Securities Exchange Act of 1934 (the "Exchange Act") and claims against Smith and Langford for violations of Section 20 of the Exchange Act. *Id.* at ¶¶ 382-406.

In a series of rulings dated March 28, 2003, August 25, 2003, and September 24, 2003, the Honorable Reginald C. Lindsay dismissed plaintiffs' claims with prejudice and denied plaintiffs' motion for leave to file an amended complaint. *See In re Stone & Webster, Inc. Sec. Litig.*, 253 F. Supp. 2d 102 (D. Mass. 2003); *In re Stone & Webster, Inc. Sec. Litig.*, 217 F.R.D. 96 (D. Mass. 2003); and *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187 at 192.[5] The granting of defendants' motions to dismiss was reversed in large part by the First Circuit. Specifically, the First Circuit rejected Judge Lindsay's determination that plaintiffs failed to plead defendants' fraud with particularity, and held that plaintiffs adequately alleged facts which

---

financial statements in accordance with GAAS while remaining oblivious to the manifest red flags and irregularities which screamed fraud at S&W. Plaintiffs sought to add these facts, derived from a memorandum prepared by S&W's counsel, Baker & McKenzie (collectively, the "Bribe Memorandum Facts," through their Motion for Leave to File a Second Consolidated and Amended Complaint. The Court denied plaintiffs leave to add these facts by an Order dated June 23, 2006. Plaintiffs intend to file a Motion for Reconsideration of the Court's June 23, 2006 Order to the extent that it denied leave to add the Bribe Memorandum Facts to the Complaint. If that Motion for Reconsideration is granted, it would affect the issues of fact common to the Class.

[5] The procedural history of this case is set forth more fully in the First Circuit's opinion reversing the dismissal of certain of plaintiffs' claims (*In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 191 (1st Cir. 2005)).

gave rise to a strong inference that Smith and Langford acted with scienter in making false statements as early as January 1999 about the Company's financial condition and liquidity. *Id*. at 198-99, 210-11. Additionally, the First Circuit reversed the dismissal of plaintiffs' Section 18 claims against each of the defendants, and plaintiffs' Section 20 claims against Smith and Langford, because those statutes do "not involve an obligation to prove 'that the defendant acted with a particular state of mind'" and therefore are not subject to the strong inference pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Id*. at 201-02, 206, 211, 215.[6]

On June 23, 2006, this Court denied Plaintiff's Motion for Leave To File A Second Consolidated and Amended Class Action Complaint, except the Court permitted plaintiffs to add to the Complaint the Additional Plaintiffs. *In re Stone & Webster, Inc. Sec. Litig.,* No. 00-10874-RWZ, 2006 WL 1738348 (D. Mass. June 23, 2006).[7] Accordingly, the following claims are presently pending:

(1) Section 10(b) claims against Smith and Langford for false statements about the Company's financial condition and liquidity between January 1999 and May 8, 2000. *Stone & Webster, Inc. Sec. Litig.*, 414 F.3d at 212. These Section 10(b) claims have a slightly different class period (January 1, 1999 through May 8, 2000) than the Class (January 22, 1998 through May 8, 2000), thus necessitating the 10b-5 Subclass;

(2) Section 18 claims against PwC, Smith and Langford based on false statements (including false statements concerning S&W's financial condition and liquidity,

---

[6] Subsequently, the First Circuit denied defendants' petition for rehearing *en banc*, noting that "the Rule 10b-5 claims against Smith and Langford that were dismissed were not necessary predicates to their liability under § 20(a)" and that the dismissal of the Rule 10b-5 claims against Smith and Langford were not "for reasons suggesting that there was no Rule 10b-5 violation by Stone & Webster." *In re Stone & Webster, Inc. Sec. Litig*., 424 F.3d 24, 27 (1st Cir. 2005).

[7] Each of the Additional Plaintiffs purchased S&W securities between July 26 and October 27, 1999. *See* attached certifications of Gilbert H. Van Note, Jr., Robert M. White (as Trustee for the Robert M. White Trust) and Kevin C. Frye. Liebesman Decl., Exs. D-F.

5

bidding practices and the TPPI project) made in reports filed with the SEC between January 22, 1998 and May 8, 2000. *Id*. at 201-202, 206, 211;

(3) Section 20(a) claims against Smith and Langford based on false statements by S&W (including false statements concerning S&W's financial condition and liquidity, bidding practices and the TPPI project) between January 22, 1998 and May 8, 2000. *Id*. at 201-202, 206, 211.

By the present motion, plaintiffs seek certification of the Class and the appointment of plaintiffs and the Additional Plaintiffs as the representatives of the Class.

## ARGUMENT

### I. Legal Standard For Class Certification

By their very nature, suits such as the instant action, seeking redress under the federal securities laws on behalf of aggrieved investors, are particularly well-suited for class action treatment. *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250 (D. Mass. 2005) ("'[c]ourts have expressed a general preference for class certification in securities fraud cases based on a policy favoring enforcement of the federal securities laws and recognition of the fact that class actions may be the only practicable means of enforcing investors' rights'") (quoting *Priest v. Zayre Corp*., 118 F.R.D. 552, 554-55 (D. Mass. 1988)); *John Hancock Life Ins. Co. v. Goldman, Sachs & Co*., No. Civ. A. 01-10729-RWZ, 2004 WL 438790, at * 2 (D. Mass. Mar. 9, 2004) ("'[t]here is little question that suits on behalf of shareholders alleging violations of federal securities laws are prime candidates for class action treatment and that Rule 23 of the Federal Rules of Civil Procedure has been liberally construed to effectuate that end'") (quoting *Grace v. Perception Tech. Corp*., 128 F.R.D. 165, 167 (D. Mass. 1989)).

The legal standards for class certification are set forth in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). A plaintiff seeking to certify an action as a class action must satisfy Rule 23(a) as to "the elements of numerosity, commonality, typicality and adequacy of

representation." A plaintiff must also satisfy one of the criteria of Rule 23(b), namely that "(1) proceeding without class certification may create incompatible standards of conduct for defendants or adverse precedent for subsequent plaintiffs, (2) defendants acted in a manner that affected the class as a whole, thereby making appropriate the application of a remedy as to the entire class, or (3) that common questions predominate over individual issues, and class certification offers a superior method for addressing these common questions." *In re: Transkaryotic Therapies, Inc. Sec. Litig.*, No. Civ.A.03-10165-RWZ, 2005 WL 3178162, at *1 (D. Mass. Nov. 28, 2005) (certifying class of investors in action alleging misrepresentations and material misstatements in violation of Section 10(b) and Section 20(a)); s*ee also Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2004) (representative plaintiff "must establish the four elements of Rule 23(a) and one of several elements of Rule 23(b)" for class certification).

As is demonstrated below, plaintiffs satisfy both Rule 23(a) and 23(b)(3), and thus, are entitled to certification of the Class.

## II. The Instant Action Satisfies Each Of The Requirements Of Rule 23(a)

### A. The Proposed Class Is So Numerous That Joinder Of All Members Is Impracticable

Rule 23(a) requires that a proposed class must be so numerous that joinder of all class members would be impracticable. To satisfy this requirement, "the class representatives need only show that it is difficult or inconvenient to join all the members of the class." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 62 (D. Mass. 1997). The proposed Class in this action easily satisfies this standard.

The Class includes all persons and entities who purchased common stock of S&W between January 22, 1998 and May 8, 2000, and who suffered losses as a result thereof. S&W

reported that it had over 13 million shares of common stock outstanding as of April 30, 1999 and over 14 million shares of common stock outstanding as of the last day of the Class Period. *See* S&W quarterly reports on Form 10-Q filed May 13, 1999 and May 15, 2000 respectively; Liebesman Decl., Exs. G and H. At all relevant times during the Class Period, S&W's common stock met the requirements for listing, and was listed and actively traded on the NYSE. During the six-month period from November 8, 1999 to May 8, 2000, the average daily trading volume for S&W common stock was 112,528 shares.[8] Liebesman Decl., Ex. I.

Based on the foregoing, it is reasonable to presume that the Class consists of thousands of geographically dispersed members, and thus the joinder of all members would be impracticable. *See In re: Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *2 (finding numerosity satisfied without exact identification of number of class members because number of shares of stock outstanding and average daily trading volume are "both factors commonly considered by courts when finding the numerosity prong satisfied despite the absence of specific information about the number of individuals who purchased the stock during the relevant period'") (quoting *Swack*, 230 F.R.D. at 258-59); s*ee also Gorsey v. I.M. Simon & Co., Inc*., 121 F.R.D. 135, 138 (D. Mass. 1988) ("[t]he numerosity requirement is satisfied since the proposed class consists of between 800-900 original purchasers of the Notes. Joinder of this size group would be impracticable"); *Kinney v. Metro Global Media, Inc*., No. Civ. A. 99-579 ML, 2002 WL 31015604, at *4 (D.R.I. Aug. 22, 2002) (rejecting defendants' contention that numerosity element was not satisfied and noting that,"[b]y sheer virtue of the fact that Metro Global stock was traded over the Nasdaq small cap market during the class period (over three years), and that

---

[8] The average trading volume for S&W common stock between November 8, 1999 to May 8, 2000 was calculated using market data obtained from Bloomberg L.P.

during that time thousands, if not millions, of the shares were traded, common sense dictates that the proposed class is very large"). Thus, it is clear that the Class for which plaintiffs seek certification satisfies the numerosity requirement of Fed. R. Civ. P. 23(a).

### B. There Are Questions Of Law And Fact That Are Common To Lead Plaintiffs And The Class

The Class proposed by plaintiffs also satisfies the requirements of Fed. R. Civ. P. 23(a)(2), which requires "that questions of law or fact be shared by the prospective class, but does not require that every question be common." *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987) (concluding that plaintiffs' securities fraud claims raised common questions which "establish[ed] the existence of the commonality required by Rule 23" and granting motion for class certification) (citation omitted). As this Court recently noted, "'[t]he threshold of commonality is not a difficult one to meet,' especially when 'there are a number of common issues of fact and law that the class members would be required to establish to prove the defendants' liability, as well as their entitlement to damages.'" *In re: Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *2 (concluding that commonality requirement was satisfied where plaintiffs identified common issues of law and fact "including whether defendants violated federal securities laws, whether defendants made misrepresentations about TKT's business and financial operations, and whether class members suffered damages") (citation omitted); s*ee also Priest v. Zayre Corp.,* 118 F.R.D. 552, 554 (D. Mass. 1988) (finding that commonality on issues of "[w]hether statements made by defendants contained misrepresentations or omissions, [w]hether the alleged misrepresentations or omissions were material, [w]hether defendants acted with scienter, and [w]hether the misrepresentations or omissions inflated the market price of Zayre common stock"); *Swack*, 230 F.R.D. at 259-60

(holding that similar questions of law or fact common to proposed class of investors satisfied commonality requirement).

The central issues to be decided in this litigation, which are common to the proposed Class, include:

(1) whether the defendants made materially false or misleading statements during the Class Period;

(2) whether Smith and Langford acted knowingly or recklessly in issuing false and misleading statements concerning S&W's financial condition and liquidity between January 1999 and May 8, 2000;

(3) whether the defendants' acts constitute violations of the federal securities laws;

(4) whether Smith and Langford may be held liable for false statements of S&W by virtue of their control over the Company;

(5) whether the defendants' misrepresentations inflated the market price of S&W common stock; and

(6) whether Class members suffered damages.

Thus, the central issues in this litigation satisfy the "commonality" requirement of Rule 23(a)(2).

C. **Plaintiffs' Claims Are Typical Of The Claims Of Other Class Members**

As a third prerequisite to class certification, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "In general, 'a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *In re: Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *3 (citation omitted). However, "[a]s with the commonality requirement, the typicality requirement does not mandate that the claims of the class representative be

identical to those of the absent class members." *Swack*, 230 F.R.D. at 260; s*ee also Abelson v. Strong,* MDL No. 584, Civ. A. No. 85-0592-S, 1987 WL 15872, at *2 (D. Mass. July 30, 1987) ("'[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met.' Seen in this light, the burden on plaintiffs in proving typicality is not 'very substantial'") (citations omitted); *Priest*, 118 F.R.D. at 555 ("'[w]ith respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent members'") (citations omitted).

The typicality requirement is clearly satisfied in the instant case, as plaintiffs' claims arise from the same events and are based on the same legal theories as the claims of absent Class members. As described above, plaintiffs allege, *inter alia*, that defendants intentionally or recklessly made materially false and misleading statements in violation of the federal securities laws, thereby inflating the price of S&W common stock and proximately causing plaintiffs' (and absent Class members') damages. Additionally, plaintiffs allege that they (like absent Class members) purchased S&W stock at inflated prices in reliance upon the integrity of an efficient market for S&W securities, and thus are entitled to a presumption of reliance. *See In re: Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *3 ("'[t]o establish typicality regarding reliance in a case brought under the fraud-on-the-market theory, the putative class representative must establish that she relied upon the integrity of the market in purchasing the securities at issue'") (quoting *Swack,* 230 F.R.D. at 261). Accordingly, as plaintiffs' claims arise from the same course of conduct that gives rise to the claims of other Class members, and

plaintiffs seek to prove defendants' liability on theories that are identical to those available to absent Class members, the typicality requirement of Rule 23(a)(3) is satisfied.

### D. Plaintiffs Are Adequate Class Representatives

The fourth requirement of Rule 23(a) is that plaintiffs "will fairly and adequately protect the interests of the class." To demonstrate adequacy, plaintiffs "must show 'first that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" *In re: Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *4 (citation omitted); *see Weiss v. Zayre Corp.*, Civ. A. No. 86-2919-2, 1988 WL 20928, at *1 (D. Mass. Feb. 29, 1988) ("'[i]nquiries into the adequacy of representation should focus on the named plaintiffs' ability to prosecute the action vigorously through qualified counsel and their lack of conflicting interest with unnamed class members'") (citation omitted). Plaintiffs easily satisfy this requirement.

Lead Plaintiffs Ram and Lens's ability to represent the Class and the 10b-5 Subclass is beyond dispute. Lens is an internationally recognized investment management firm known for maximizing the value of targeted public companies through shareholder activism. Lens is also recognized worldwide as an authority on corporate governance issues. Ram and Lens clearly possess the necessary skill and expertise to manage this litigation for the benefit of the Class and the 10b-5 Subclass. During the Class Period, Lens purchased 100,000 S&W shares, and Ram purchased approximately 136,630 shares of S&W common stock. Additional Plaintiffs Gilbert H. Van Note, Jr., Robert M. White, Trustee for the Robert M. White Trust and Kevin C. Frye are individuals who purchased S&W stock throughout 1999.

Plaintiffs' interests do not conflict with the interests of the Class members. Both the Lead Plaintiffs and the Additional Plaintiffs are each victims of the same conduct by the defendants as all other Class members and, like other class members, suffered monetary losses as a result of that conduct. *See* Liebesman Decl., Exs. D-F, J and K (certifications of Lead Plaintiffs and Additional Plaintiffs). Thus plaintiffs have an incentive to achieve the maximum possible recovery on behalf of the Class. Plaintiffs are represented by experienced counsel with a proven history of effectively prosecuting federal securities class actions on behalf of shareholders. *See* Liebesman Decl., Ex. L (attaching the firm resume of Grant & Eisenhofer P.A.). Lead counsel has vigorously litigated this action for more than five years, including the successful prosecution of an appeal before the First Circuit.

As plaintiffs' interests are not antagonistic to those of other members of the Class, and their counsel is unquestionably qualified and demonstrably committed to the vigorous prosecution of this action, Rule 23(a)(4) has been satisfied.

### III.  The Proposed Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that common questions or law and fact predominate over any questions affecting only individual Class members, and that a class action be superior to other available methods for the fair and efficient adjudication of this controversy. Fed R. Civ. P. 23(b)(3). The proposed Class clearly meets these requirements.

#### A.  Predominance

As described in section II.B., *supra*, common issues of law and fact clearly predominate over any individual issues in this case. In the aggregate, those common issues are determinative of the fundamental controversy in this case – whether the defendants violated the federal securities laws and are liable for damages to the Class as a result thereof. Rule 23(b)(3) requires

merely that such "common issues predominate, not that all issues be common to the class." *Smilow*, 323 F.3d at 39;[9] s*ee In re: Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *2 (noting that "where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain") (citation omitted); *Randle v. Spectran*, 129 F.R.D. 386, 393 (D. Mass. 1988) (holding that "common questions with respect to the existence and materiality of misleading statements or omissions in documents or press releases concerning [corporation's] securities, along with the related questions of defendants' liability for such alleged statements or omissions, predominate over any individual questions in this action").

### B. Superiority

There is also little question that a class action is the superior vehicle for the efficient adjudication of the instant controversy. *See Priest*, 118 F.R.D. at 556 ("[b]ecause of the size of the class, the extent of common questions, and the tendency toward certifying actions in securities cases, I find that a class action is the superior mechanism for litigation of the federal securities claim"). A class action is appropriate when "the piecemeal adjudication of numerous separate lawsuits covering the same or substantially similar issues. . .would be an inefficient allocation of limited court resources." *In re: Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *2; *Swack*, 230 F.R.D. at 273 ("[c]learly, the piecemeal adjudication of numerous separate lawsuits covering the same or substantially similar issues--*i.e.,* the Defendants' allegedly illegal conduct and the impact thereof on the market price of Razorfish stock--would be an

---

[9] In *Smilow*, the First Circuit noted that "[c]onsideration of the policy goals underlying Rule 23(b)(3) also supports class certification. The class certification prerequisites should be construed in light of the underlying objectives of class actions." Here, there is an additional policy consideration favoring certification – the "policy favoring enforcement of the federal securities laws and recognition of the fact that class actions may be the only practicable means of enforcing investors' rights.'" *See* Section II *supra*; *Swack*, 230 F.R.D. at 258.

inefficient allocation of limited court resources"). "Furthermore, and even more importantly, is the very real risk that potential class members with relatively small claims would not have the financial incentives or wherewithal to seek legal redress for their injuries." *In re: Transkaryotic Therapies, Inc. Sec. Litig.*, 2005 WL 3178162, at *2; s*ee Smilow*, 323 F.3d at 41 ("[t]he core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation"). Both of these risks (*e.g.,* the risk of duplicative, piecemeal adjudication and the risk that potential class members will not have adequate financial incentives or resources to pursue claims) are clearly present in the instant case. Accordingly, a class action is the superior method for the efficient and just resolution of this controversy.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs hereby request oral argument on this motion.

## **CONCLUSION**

For all of the foregoing reasons, the plaintiffs respectfully request that this action be certified as a class action under Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the Class and the 10b-5 Subclass defined herein, and that plaintiffs be certified as the representatives of the Class and the 10b-5 Subclass.

Dated: July 7, 2006

/s/ Sidney S. Liebesman
Jay W. Eisenhofer
Sidney S. Liebesman
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 North Market Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100
*Lead Counsel for Plaintiffs*

Norman M. Berman (BBO# 040460)
Bryan A. Wood (BBO# 648414)
BERMAN, DEVALERIO, PEASE,
TABACCO, BURT & PUCILLO
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
*Liaison Counsel for Plaintiffs*